IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR THE COUNTY OF BREVARD, STATE OF FLORIDA
CIVIL DIVISION

WILLIAM LANGE,

    Plaintiff,

CASE NO.: 6:12-CV-712-ORL-31DAB

v.

DIV.:

VERIZON WIRELESS SERVICES, LLC.,

    Defendant.
_____/

## COMPLAINT

1. Plaintiff alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §§559.55-559.785 *et seq.* ("FCCPA") and intentional infliction of emotional distress.

## JURISDICTION AND VENUE

2. This is an action for damages exceeding Fifteen Thousand Dollars ($15,000.00) exclusive of attorney fees and cost.

3. Jurisdiction and venue for purposes of this action are appropriate and conferred by Florida Statute.

4. The alleged violations described in the Complaint occurred in Brevard County, Florida.

## FACTUAL ALLEGATIONS

5. Plaintiff is a natural person, and citizen of the State of Florida, residing in Brevard County, Florida.

6. Plaintiff is a "consumer" as defined in Florida Statute §559.55(2).

7. Plaintiff is an "alleged debtor."

1

8. Defendant is a corporation and a citizen of the State of New Jersey with its principal place of business at One Verizon Way, VZ52N068, Basking Ridge, New Jersey, 07920.

9. Defendant is a "creditor" as defined by Florida Statute §559.55(3).

10. Defendant attempted to collect a debt from Plaintiff that arose from a transaction incurred for personal, family or household purposes and therefore is a "consumer debt."

11. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(1).

12. Defendant called the Plaintiff approximately five-hundred (500) times between November 2011 and February 2012, willfully, and intentionally violating the TCPA and FCCPA.

13. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass, beginning in November 2011.

14. Each call the Defendant made to the Plaintiff was made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §227(a)(1).

15. Each call the Defendant made to the Plaintiff's cellular phone was done so without the "express permission" of the Plaintiff.

16. In or about January 2011, the Plaintiff requested phone service from Defendant.

17. Defendant's service was unsatisfactory, and as a result Plaintiff cancelled service with the Defendant in April 2011.

18. In or about April 2011, the Plaintiff returned Defendant's equipment that did not work.

19. The Plaintiff withdrew any "express consent" the Defendant's had or believed to have had, upon his first contact with the Defendant.

20. In April 2011, Plaintiff told Defendant on the phone he did not owe them any money and to stop calling his cellular phone.

21. Defendant knew in April 2011 that Plaintiff did not owe Defendant one penny because their equipment did not work and that he had no intention of paying the Defendant.

22. Despite Defendant's knowledge that they had no express permission to call Plaintiff's cellular phone, they continued to call the cellular phone of Plaintiff intentionally and knowingly from November 2011 through January 2012.

23. Plaintiff received telephone calls from the Defendant in which they used a pre-recorded or artificial voice indicating they had an important message for the Plaintiff and to hold the line until a live person, that worked for the Defendant, came on to the line.

24. Once a live person came on the line, the Plaintiff explained he did not owe them money and to stop calling his cellular phone.

25. Plaintiff repeated to Defendant, at least ten (10) times, on different days, that he did not want the Defendant calling his cellular phone anymore; however, the Defendant persisted calling.

26. On one occasion, Plaintiff asked to talk to the "highest supervisor" in Defendant's Atlanta call center. Plaintiff asked the supervisor if they were intentionally harassing him and was told "yes" that the Defendant was going to "harass and call him until he paid the bill."

27. On November 30, 2011, Defendant sent Plaintiff a letter threatening to report this debt to the credit reporting agencies without reporting the Plaintiff's dispute to this debt, in blatant violation of Florida law. [Please see Exhibit A].

28. It is Plaintiff's belief Defendant has sent this exact letter, marked as Exhibit A, addressed to thousands of individuals throughout Florida.

29. Defendant has a corporate policy to send out illegal and threatening letters, such as Exhibit A.

30. Defendant made between approximately five (5) and ten (10) calls to Plaintiff's cellular phone every day in December 2011.

31. Defendant repeatedly hung up on Plaintiff when he explained he did not owe the money and to stop calling his cellular phone.

32. On December 16, 2011, Plaintiff sent a letter to Defendant asking to provide proof of this debt and explaining how upsetting the incoming calls from the Defendant were to him and his family. [Please see Exhibit B]

33. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse and harassment.

34. On January 23, 2011, Plaintiff sent another letter to Defendant asking to provide proof of this debt and reiterated that the Defendant had no permission to contact him on his cellular phone. [Please see Exhibit C]

35. On January 24, 2012 at 6:24 p.m., Defendant's employee "Elisa" was informed by the Plaintiff to not call Plaintiff's cellular phone. The Plaintiff was in the middle of explaining his situation to "Elisa" when she intentionally hung-up on him.

36. On January 30 2012 at 7:10 p.m., Defendant's employee "Rhonda" was also informed by the Plaintiff to not call his cellular phone. The Plaintiff again attempted to explain his situation when "Rhonda" intentionally hung-up on him.

37. On January 30, 2012 at 7:25 p.m., another employee of Defendant was informed to not call Plaintiff's cellular phone. Again, without consideration of the Plaintiff's request, the representative hung-up on the Plaintiff.

38. On February 3, 2012 at 10:39 a.m., Plaintiff informed Defendant's employee not to contact him anymore on his cellular phone. However, the Defendant's employee told the Plaintiff they could call him because they are "not in California or Louisiana"; therefore, they could call because "it is not against Florida law".

39. On February 3, 2012, Defendant called again. Plaintiff once again requested to speak to a supervisor and advised the Defendant to stop calling his cellular phone and further stated he was disputing the bill.

40. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals, just as they did to the Plaintiff's cellular telephone in this case.

41. Defendant has a corporate policy to continue calling individuals despite those individuals asking calls to stop.

42. Defendant has a corporate policy to continue calling individuals despite those individuals telling the Defendant they do not owe the amount the Defendant was collecting.

43. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

44. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation to the TCPA)

Plaintiff incorporates Paragraphs one (1) through forty-four (44) above as if fully set forth herein, and further states:

45. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice without

5

Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, actual damages, punitive damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

Plaintiff incorporates Paragraphs one (1) through forty-five (45) above as if fully set forth herein, and further states:

46.  At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

47.  Defendant has violated Florida Statute §559.72(3) by sending the Plaintiff a letter on November 30, 2011 threating to report Plaintiff's debt to the credit reporting agencies without reporting Plaintiff's dispute, as indicated in ¶ 33.

48.  Defendant has violated Florida Statute §559.72(7) by willfully communicating with the debtor with such frequency as can reasonably be expected to harass the debtor.

49.  Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse the debtor.

50.  Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to harass the debtor.

51.  Defendant has violated Florida Statute §559.72(9) by claiming, attempting or threatening to enforce a debt when such person knows that the debt is not legitimate.

52.   Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, actual damages, punitive damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT III
### (Intentional Infliction of Emotional Distress)

Plaintiff re-alleges paragraphs one (1) through fifty-two (52) above as if fully set forth herein, and further states:

53.   Defendant individually, and through its employees, agents, representatives and collectors, has intentionally inflicted severe emotional distress on the Plaintiff by its outrageous conduct.

54.   The outrageous conduct as set forth in paragraphs one (1) through fifty-three (53) herein, were directed at Plaintiff by and through Defendant's employees, agents, apparent agents or other persons acting to benefit and further the interests of Defendant, in the course and scope of their employment or agency with Defendant.

55.   As a direct and proximate result of the outrageous acts described in paragraphs one (1) through fifty-four (54) herein, Plaintiff sustained mental pain and suffering, severe emotional distress, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully request judgment be entered against Defendant for statutory damages, actual damages, punitive damages, enjoinder from further violations, costs, interest, attorney fees and any other such relief this Honorable Court deems appropriate in the spirit of Justice.

Respectfully submitted,

_____
William Peerce Howard, Esquire
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
Florida Bar #: 0103330
Attorney for Plaintiff